UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | Judge |
| vs. ) | |
| ) | |
| FUNDS IN THE AMOUNT OF $884,630 ) | |
| IN UNITED STATES CURRENCY, ) | |
| ) | |
| Defendant, *In Rem*. ) | |
| ) | |

**VERIFIED COMPLAINT FOR FORFEITURE, *IN REM***

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem*.

Plaintiff hereby alleges as follows:

**Nature of the Action**

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in,

(2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4. Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5. This complaint is verified by the attached Verification of Drug Enforcement Administration ("DEA") Special Agent Kevin S. Frankel ("SA Frankel"), which is fully incorporated herein.

## The Defendant *In Rem*

6. The Defendant *in rem* consists of the following property:

- $884,630 (eight hundred eighty-four thousand and six hundred thirty dollars) in United States currency.

(Hereinafter, the "subject property").

7. The subject property was seized on November 30, 2018, by the DEA Group 24 Task Force ("Group 24") operating out of Amtrak® Union Station in Chicago, Illinois ("Union Station"), to which SA Frankel is assigned.

8. The subject property is currently in the custody of the United States Marshals Service.

**Jurisdictional Statement**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

**Basis for Forfeiture**

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

13. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of

racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

14. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from "proceeds traceable" to "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

## Summary of Facts

15. On November 30, 2018, members of DEA Group 24 conducted a consensual interview at Union Station, which led to the discovery and seizure of the subject property from Max Albert Hartman ("Hartman"), a passenger traveling via Amtrak® on a one-way ticket from New York, New York to Los Angeles, California via Chicago, Illinois.

16. A police canine certified by the State of Illinois, the North American Police Work Dog Association ("NAPWDA"), and Vapor Wake K9, demonstrated as a positive alert on the subject property, indicating the presence of one of five odors he is trained to detect.

17. Based upon the experience of DEA Group 24 officers, including SA Frankel, and the totality of the circumstances further described below, the subject property was seized for forfeiture.

## Facts

I. Union Station Interdiction and Discovery of the Subject Property

    A. Overview of DEA Group 24 at Union Station

18. This Complaint describes an investigation conducted by members of DEA Group 24 at Union Station, to which SA Frankel is a member.

4

19. The primary responsibility of Group 24 is to investigate crimes involving the use of public train stations, commercial airlines and shipping companies to transport illegal drugs and drug proceeds.

20. Based upon the experience of Group 24 investigators and in similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand locations for illicit drugs.

21. States such as Arizona and California are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

22. Person(s) involved in the illegal drug trade, often hire couriers to transport drugs and or proceeds from the sale of drugs by utilizing commercial airlines and shipping companies.

23. In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious flight itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

24. Factors that constitute suspicious flight itineraries include airfare purchase at the counter immediately prior to departure or short notice reservations for one-way travel, sometimes paid in cash.

25. In addition, Group 24 investigators know it is common for couriers to utilize a third-party credit card to purchase airfare and to provide inaccurate or not in-service telephone numbers to airline and other transit companies.

26. Couriers travel with minimal or no luggage and often attempt to board the train at the last possible moment.

27. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airlines and passenger railroad services.

    B. Travel Itinerary and Interview with Hartman

28. On November 30, 2018, law enforcement officers assigned to Group 24 were alerted to the suspicious travel itinerary of Hartman.

29. Hartman was traveling on a one-way ticket from New York, New York to Los Angeles, California, via Chicago, Illinois, on Amtrak® train number 49/3.

30. The ticket was purchased by Hartman on the same day of his scheduled departure for $789.

31. Based upon the training and experience of Group 24 investigators, illegal drug couriers often purchase airline tickets one day or so prior to the scheduled departure.

32. Group 24 investigators also know Los Angeles, California, and the central California region in particular, to be a known source area for illegal drug trafficking.

33. Further, Group 24 investigators also know that those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or accompanying bags or suitcases.

34. As such, Group 24 investigators sought to conduct a consensual interview of Hartman prior to boarding Amtrak® train number 3.

35. In an attempt to assist in locating Hartman, agents obtained a photo of Hartman through open internet resources.

36. At approximately 2:25 p.m., Group 24 investigators established surveillance near the train number, car number 331 at Union Station, in an attempt to interview Hartman.

37. At the time, the investigators were dressed in civilian clothing with no weapons, radios, or other law enforcement paraphernalia visible.

38. Shortly thereafter, SA Frankel, Task Force Officers Arnold Martinez ("TFO Martinez") and Torrence Johnson ("TFO Johnson") located Hartman on the platform as he approached car number 331.

39. SA Frankel observed that Hartman was pulling a large gray duffle bag, carrying a black Reebok® gym bag and wearing a black Northface® backpack.

40. TFO Martinez identified himself as a law enforcement officer by displaying his credentials and badge.

41. TFO Martinez then requested to speak with Hartman.

42. TFO Martinez informed Hartman that he was not under arrest and was not in any trouble, and that he was requesting a consensual interview.

43. Hartman stated that he understood and agreed to speak with TFO Martinez.

44. TFO Martinez then requested to see Hartman's boarding pass.

45. In response to this, Hartman provided his electronic boarding pass on his cellphone.

46. When TFO Martinez asked Hartman where he was traveling, Hartman stated that he was going home to California.

47. TFO Martinez asked Hartman if he had any other luggage other than what he had with him.

48. Hartman stated that he did not have any other luggage.

49. When asked whether he packed his own bags, knew all the items in his bags, and if all the contents of his bags and on his person was his, Hartman replied "[y]es" to all three questions.

50. TFO Martinez asked Hartman whether anyone had asked him to carry, bring, or hold anything for him during his travel, and Hartman said "[n]o."

51. TFO Martinez asked Hartman if he had any weapons or illegal drugs on his person or in his luggage, to which Hartman replied "[n]o."

52. When TFO Martinez asked Hartman if he had any large amounts of currency, money orders, or cashier's checks on his luggage or person, Hartman's demeanor changed; he got upset and started sweating profusely from his forehead.

53. Hartman stated that he did not have any currency in his possession.

54. During the course of the interview, Hartman would not consent to a search of his luggage.

    C.  Canine Examination of Hartman's Luggage at Union Station

55. In order to verify his statements, TFO Martinez asked Hartman for permission to search his luggage.

56. At this time, Hartman became very agitated and stated that he would not consent to a search of his luggage.

57. SA Frankel advised Hartman that he was going to request a canine to conduct a sniff test on the luggage.

58. At approximately 2:49 pm., Amtrak® Canine Officer Robert Crowley ("Officer Crowley") and his canine partner "Gander," arrived at the platform next to car number 331.

59. Gander is currently five years old and Officer Crowley is Gander's second handler.

60. Gander is certified by the State of Illinois (most recently on December 13, 2018), the NAPWDA (most recently on April 4, 2018), and Vapor Wake K9 (most recently on April 6, 2018).

61. Gander was last certified prior to this investigation by the State of Illinois on August 30, 2018.

62. Gander is trained and certified to detect five odors: (1) marijuana, (2) cocaine, (3) heroin, (4) ecstasy, and (5) methamphetamine.

63. If at any time during a search Gander smells one of the five odors he is trained to detect, Gander will alert with a passive alert at the area where he smells the odor.

64. Hartman's luggage was separated, and placed in different locations on the platform, along with several other bags.

65. Officer Crowley gave Gander the command to search/sniff.

66. As Gander sniffed Hartman's luggage and the other bags, Officer Crowley observed Gander focus his stare and sit as he neared the black Reebok® gym bag, the black Northface® backpack and the large gray duffle bag.

67. Officer Crowley recognized this behavior as a positive alert indicating Gander smelled one of the five odors he is trained to detect.

68. Officer Crowley did not recognize behavior from Gander indicating an interest in any other items or luggage on the platform.

69. At this time, Hartman was advised that the canine gave a positive alert to all three pieces of his luggage.

70. TFO Martinez again asked Hartman if he had any illegal drugs in his luggage and Hartman replied "[n]o."

71. When TFO Martinez again asked Hartman if he had any large amounts of currency in his luggage, Hartman paused, and stated "[h]e had money."

72. TFO Martinez asked Hartman how much money he had, and Hartman relied that he had $40,000.

73. In order to verify his statement, TFO Martinez again asked for consent to search his luggage.

74. Hartman stated that the agents could search the black Northface® backpack, which had the $40,000, but not his other two bags.

75. SA Frankel advised Hartman that the canine had alerted to all three pieces of luggage and if he did not wish to consent to a search, the luggage would be detained pending the application for a search warrant.

76. On December 3, 2018, law enforcement agents obtained and executed State of Illinois search warrants for all three pieces of luggage.

77. A total of $884,630 in U.S. currency was discovered in Hartman's luggage.

    D. Questioning of Hartman at the DEA Office

78. SA Frankel advised Hartman that he could accompany agents to the DEA office at Union Station to obtain a receipt for his luggage.

79. Hartman voluntarily accompanied agents to the office to obtain a receipt for his luggage.

80. Once inside the DEA office, Hartman revoked his consent to search the black Northface® backpack.

81. At this time, Hartman was provided a receipt for the black Reebok® gym bag, the black Northface® backpack and the large gray duffle bag.

    E. Search Warrants for luggage

82. On December 3, 2019, Illinois state search warrants were obtained for the 3 pieces of luggage.

83. On the same date, agents executed the warrants on the black Reebok® gym bag, the black Northface® backpack and the large gray duffle bag.

84. During the search of the black Reebok® gym bag, agents discovered silver mylar packages which further contained clear plastic vacuum sealed packages of rubber banded bundles of U.S. currency.

85. During the search of the black Northface® backpack, agents discovered rubber banded bundles of U.S. currency hidden under various items.

86. During the search of the large gray duffle bag, agents discovered clear plastic vacuumed sealed packages of rubber banded bundles of U.S. currency, as well as one large mylar package containing multiple clear plastic packages of clear plastic vacuumed sealed rubber banded bundles of U.S. currency.

87. A total of $884,630 in U.S. currency was found in the black Reebok® gym bag, the black Northface® backpack and the large gray duffle bag.

88. The subject property consisted of 2,673 one hundred-dollar bills, 1,369 fifty-dollar bills, 27,191 twenty-dollar bills, 459 ten-dollar bills, 88 five-dollar bills, and 30 one-dollar bills.

II. Administrative Forfeiture Proceedings

89. On January 10, 2019, DEA initiated administrative forfeiture proceedings against the $884,630 in U.S. currency seized from Hartman by mailing a Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

90. In response to this notice, Attorney Richard M. Barnett, of the Law Offices of Richard M. Barnett, on behalf of Hartman, sent a letter dated February 12, 2019 to DEA.

91. Barnett's letter included a Verified Claim executed by Hartman and a copy of the Notice of Seizure issued by DEA.

92. On February 22, 2019, DEA referred this matter to the United States Attorney's Office in Chicago to initiate judicial forfeiture proceedings.

III. Additional Seizure

93. On March 1, 2019, law enforcement officers in White Plains, New York seized $409,805 in U.S. currency from Hartman.

94. On March 26, 2019, DEA initiated administrative forfeiture proceedings against the $409,805 in U.S. currency seized from Hartman by mailing a Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

95. In response to this notice, Attorney Richard M. Barnett, of the Law Offices of Richard M. Barnett, on behalf of Hartman, sent a letter dated April 25, 2019 to DEA.

96. Barnett's letter included a Verified Claim executed by Hartman and a copy of the Notice of Seizure issued by DEA.

97. On April 30, 2019, DEA referred this matter to the United States Attorney's Office in New York to initiate judicial forfeiture proceedings.

## First Cause of Action

98. Plaintiff repeats and realleges the averments in paragraphs one through 97 as though fully set forth herein.

99. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

100. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id*.

**Second Cause of Action**

101. Plaintiff repeats and realleges the averments in paragraphs one through 97 as though fully set forth herein.

102. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

103. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

104. Pursuant to 18 U.S.C. § 1956:

> (3) Whoever, with the intent—
>   (A) to promote the carrying on of specified unlawful activity;
>   (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>   (C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

13

105. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

106. The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

### Third Cause of Action

107. Plaintiff repeats and realleges the averments in paragraphs one through 97 as though fully set forth herein.

108. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

109. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

110. Pursuant to 18 U.S.C. § 1956:

> (3) Whoever, with the intent—
> (A) to promote the carrying on of specified unlawful activity;
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
> (C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or

> property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

111. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

112. The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

113. Section 1952(a) describes the following as an indictable act:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

114. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]".

**Fourth Cause of Action**

115. Plaintiff repeats and realleges the averments in paragraphs one through 97 as though fully set forth herein.

116. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to "dealing in a controlled substance," a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

117. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified

unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. See 18 U.S.C. § 981(a)(1)(C)(2018).

118. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

119. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" See 18 U.S.C. § 1961(1)(A).

### Fifth Cause of Action

120. Plaintiff repeats and realleges the averments in paragraphs one through 97 as though fully set forth herein.

121. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign travel or transportation in aid of racketeering enterprises), a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

122. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. See 18 U.S.C. § 981(a)(1)(C)(2018).

123. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

124. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

125. Section 1952(a) describes the following as an indictable act:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

126. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]"

**Prayer for Relief**

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1) That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2) That due notice be given to all parties to appear and show cause why forfeiture of the subject property to the United States in accordance with the claims herein set forth should not be decreed;

3) That this Court enter a judgment of forfeiture for the subject property to the United States; and

4) That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DATED this 13th day of May 2019.

JOHN R. LAUSCH, JR.
United States Attorney
For the Northern District of Illinois

By: *Jeffrey R. Borup*
JEFFREY R. BORUP
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
Desk: (312) 697-4087
Email: jeffrey.borup@usdoj.gov

Attorneys for Plaintiff
United States of America

NORTHERN DISTRIT OF ILLINOIS )
) SS
COUNTY OF COOK )

## VERIFICATION

I, Kevin S. Frankel, declare under penalty of perjury the following:

1. I am a Special Agent with the Drug Enforcement Administration and have been so employed since 01-05-1997

2. My duties and responsibilities as a Special Agent with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

3. I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

4. This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

Executed on the 13 of May 2019, in Chicago, Illinois.

KEVIN S. FRANKEL
Special Agent
Drug Enforcement Administration